RAYMOND AND MARY O'ROURKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Rourke v. Commissioner
Docket No. 13052-89
United States Tax Court
T.C. Memo 1993-603; 1993 Tax Ct. Memo LEXIS 612; 66 T.C.M. (CCH) 1661; December 20, 1993, Filed *612 Raymond and Mary O'Rourke, pro se. For respondent: June Y. Bass. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows for the tax years 1980 through 1986: Mary O'Rourke Additions to Tax
Sec.
Sec.
Sec.
6651
6653
6653 [1]
Year
Deficiency
(a)(1)
(a)(1)
(a)(1)(A)
1980
$ 40,875.00
$ 10,218.75
$ 2,043.75
--
1981
23,781.00
5,945.25
1,189.05
--
1982
22,382.00
5,595.50
1,119.10
--
1983
24,251.00
6,062.75
1,212.55
--
1984
23,117.00
5,779.25
1,155.85
--
1985
22,751.35
5,687.83
1,137.57
--
1986
22,406.30
5,601.57
--
$ 1,120.32
Additions to Tax
Sec.
Sec.
6653 [1]
6653
Sec.
Sec.
Year
(a)(1)(B)
(a)(2)
6654
6661
1980
--
--
$ 2,616.00
--
1981
--
[2]
1,826.38
--
1982
--
[2]
2,179.00
$ 5,595.50
1983
--
[2]
1,484.00
6,062.75
1984
--
[2]
1,453.00
5,779.25
1985
--
[2]
1,302.00
5,687.83
1986
[2]
--
1,082.88
5,601.57
Raymond O'Rourke Additions to Tax
Sec.
Sec.
Sec.
6651
6653
6653 [1]
Year
Deficiency
(a)(1)
(a)(1)
(a)(1)(A)
1980
$ 42,973.00
$ 10,743.25
$ 2,148.65
--
1981
26,543.00
6,635.75
1,327.15
--
1982
25,411.00
6,352.75
1,270.55
--
1983
27,589.00
6,897.25
1,379.45
--
1984
27,388.40
6,847.10
1,369.42
--
1985
27,424.00
6,856.00
1,371.20
--
1986
27,572.00
6,893.00
--
$ 1,378.60
*613 Additions to Tax
Sec.
Sec.
6653
6653
Sec.
Sec.
Year
(a)(1)(B)
(a)(2)
6654
6661
1980
--
--
$ 2,750.27
--
1981
--
[2]
2,038.50
--
1982
--
[2]
2,475.00
$ 6,352.75
1983
--
[2]
1,688.00
6,897.25
1984
--
[2]
1,722.00
6,847.10
1985
--
[2]
1,575.25
6,856.00
1986
[2]
--
1,333.00
6,893.00
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After respondent's concession of the additions to tax under section 6661, the issues remaining for decision are: (1) Whether petitioners had unreported taxable income from elderly tenants in their house, dividends, and other sources, and capital gains and losses from stock sales, and, if so, in what amounts. (2) Whether each petitioner had self-employment income for the years in issue. (3) Whether petitioners are liable for additions to tax under section 6651(a)(1) for failing to file Federal income tax returns for the years in issue. (4) Whether *614 petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) for each year 1980 through 1985 and section 6653(a)(2) for each year 1981 through 1985 and under section 6653(a)(1)(A) and (B) for the tax year 1986. (5) Whether petitioners are liable for additions to tax under section 6654 for underpayment of estimated tax for each of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. General
Petitioners, husband and wife, resided in La Jolla, California, on the date the petition was filed and during the years in issue. Between 1942 and 1950, petitioners attended the University of Michigan; Dr. O'Rourke received bachelor's, master's, and Ph.D. degrees, and Mrs. O'Rourke received a master's degree. Subsequently, Dr. O'Rourke attended the Sloan School of Business Management in the Boston area. Petitioners have three sons, Albert, Peter, and William, and one daughter, Kathryn. Petitioners did not file a U.S. Individual Income Tax Return, Form 1040, for any of the tax years 1980 through 1986. *615 Petitioners filed a Form 1040 as married, filing joint return for 1979, which their son, Albert, an attorney, signed as preparer. The IRS sent a separate statutory notice of deficiency to each of the petitioners, which treated each as married, filing separate. In the statutory notices, respondent determined income based on the bank deposits method, treated the income as community income, and attributed one-half of such income to each petitioner. Maxwell Stock and Penny Stocks
Rorack Co. (Rorack) was a partnership created in the 1960s by Dr. O'Rourke and Dr. Alan Kolb. In May 1984, Rorack distributed 6,750 shares of common stock of Maxwell Laboratories, Inc. (Maxwell) to Dr. O'Rourke. [1] In 1984, Maxwell redeemed the 6,750 shares from Dr. O'Rourke, for which a $ 143,437.50 check payable to him was received by petitioners. Petitioners' basis in the Maxwell stock was $ 27,000, or four dollars per share. After receiving the check, Dr. O'Rourke endorsed it in favor of his brokerage account with Bateman Eichler, Hill Richards Incorporated and used it to purchase 19,500 shares of Maxwell stock in May and June 1984. *616 During the years in issue, petitioners purchased and sold numerous shares of stock in various companies. The brokerage statements reflecting these transactions show that the clients of these accounts are "Albert O. O'Rourke, Dr. Raymond C. O'Rourke, Mary M. O'Rourke, Jt/Ten" or similar designations. The following net gains and losses resulted from these sales: Short Term
Long Term
Year
Gain (Loss)
Gain (Loss)
1980
$  3,799.85 --
1981
(15,479.37)
$   3,758.91 1982
3,125.17 5,543.96 1983
10,917.38 (7,989.42)
1984
(848.50)
[1] 116,505.58 1985
2,372.70 (1,189.09)
1986
--
(1,959.25)
For some of the sales, petitioners did not introduce evidence of basis. The brokerage statements also show dividend income in the amounts of $ 332.60, $ 31, $ 44.09, $ 20.30, $ 1.91, and $ 915 for the tax years 1980, 1981, 1982, 1983, 1984, and 1986, respectively. Petitioners withdrew funds from their brokerage accounts to pay their personal expenses. Elderly Care Business
Petitioners purchased their house and lot for $ 120,000 in 1968. The house *617 has 3,248 square feet of living area, including a living room, dining room, family room, four bedrooms, two full baths, and two three-quarter baths; the garage area is 493 square feet. The parties stipulated that 60 percent of the cost basis is allocable to the house and 40 percent to the land. Petitioners began depreciating the house in 1972, using the straight line method, a 20-year life, and no salvage value. During the years in issue, petitioners lived in the house. Although the testimony is not clear, petitioners' sons, Albert and Peter, lived in the house at least some of the time. Mr. O'Rourke's brother, Norman, also lived in the house from 1983 through 1989 when he died. From January 1, 1980, through December 31, 1986, [2] petitioners operated, as a sole proprietorship, a residential facility for the elderly at their house, doing business under the name of the O'Rourke Residential Care Home and other similar names. Mary O'Rourke managed the O'Rourke Residential Care Home. *618 At trial, the parties stipulated that the gross receipts from the O'Rourke Residential Care Home were as follows: Year
Gross Receipts
1980
$ 121,947.84
1981
119,259.27
1982
120,869.31
1983
121,913.39
1984
121,026.96
1985
[1] 121,184.27
1986
[1] 121,838.00
The parties stipulated that "petitioners have substantiated their entitlement to the following deductions": Itemized
Schedule C
Year
Deductions
Deductions
1980
[1] $ 6,652.16
[1] $ 14,987.16
1981
5,496.89
5,445.53
1982
[1] 5,863.32
[1] 4,812.99
1983
8,160.84
9,208.64
1984
4,320.74
5,277.58
1985
6,343.14
6,974.36
1986
[1] 5,497.41
[1] 4,559.97
*619 Petitioners were entitled to annual depreciation of $ 2,250 for the years 1980 through 1982, and to annual depreciation of $ 2,000 for the years 1983 through 1986 relating to the use of their house for the operation of the O'Rourke Residential Care Home. [3]
*620 Petitioners did not keep a formal set of books for the O'Rourke Residential Care Home for the tax years 1980 through 1986. The Form 1040 for 1979 filed by petitioners reflects "Approximate" business income of $ 5,600, which relates to the attached Schedule C, Profit or (Loss) From Business or Profession, for the O'Rourke Residential Care Home; the Schedule C states that the cash method is used, and shows "Approximate" gross receipts of $ 55,000. Other Income
From 1980 through 1986, petitioners also did business under the name of O'Rourke and Associates or Raymond C. O'Rourke and Associates, a sole proprietorship. Dr. O'Rourke testified that this was an informal collection of family members and friends. Two checks payable to "O'Rourke & Associates" and "Raymond O'Rourke & Associates" which total $ 4,000 were drawn on Mrs. Davis' account in August 1985. During 1982, Texas Tech University wrote a check payable to "Dr. Raymond O'Rourke, O'Rourke and Associates" in the amount of $ 959, which was deposited in one of petitioners' bank accounts on March 12, 1982. Petitioners received taxable interest income of $ 106 for 1986 and a Form 1099-Int. reflecting the interest income. *621 During the tax years 1985 and 1986, Dr. O'Rourke received $ 420 per month in Social Security benefits. During the tax year 1980, Mrs. O'Rourke received $ 225 per month in Social Security benefits. Procedural Matters
Petitioners filed their petition in this case in June 1989. Respondent filed a timely answer. On June 8, 1990, respondent filed a Motion to Compel Responses to Respondent's Interrogatories and Compliance with Respondent's Request for Production of Documents or to Impose Sanctions Under Rule 104. On July 2, 1990, petitioners filed a response opposing the motion alleging that their attorney, their son Albert, was litigating his standing as an attorney and had compiled some of the documents. By Order of Suspension dated September 7, 1990, pursuant to Rule 202, Albert O'Rourke was suspended from further practice before this Court and required to withdraw within 20 days from all cases before the Court except this case. By Order dated October 10, 1990, this Court granted respondent's motion that petitioners comply by November 30, 1990, with the discovery requests. On December 3, 1991, the parties were sent our Standing Pretrial Order, which provides in part that *622 they stipulate to the facts and evidence to the maximum extent possible. Respondent filed a request for admissions on January 10, 1992. On March 13, 1992, respondent filed a Motion for Sanctions, stating in part that petitioners' answers to respondent's interrogatories were unresponsive, contradictory, frivolous, and misleading, that petitioners delivered 14 boxes of files, which contained cookies and dirty socks along with numerous documents, in response to the request for production of documents, and that petitioners' responses to respondent's request for admissions were also unresponsive, frivolous, and contradictory. Petitioners filed an opposition to respondent's motion and a motion for a continuance, both on April 13, 1992. The Court denied Petitioners' Motion for Continuance on April 22, 1992. Pursuant to conference calls in March and April 22, 1992, the parties advised the Court that petitioners' son, Albert, would no longer continue to represent petitioners because of complications regarding his status as a practicing attorney in the State of California, that neither petitioners nor respondent objected to the withdrawal, and that Mrs. O'Rourke may have been declared *623 incompetent by the State of California. By Order dated April 22, 1992, we ordered the withdrawal of Albert O'Rourke as petitioners' counsel, and that petitioners advise the Court in writing before the May 4, 1992, trial session scheduled in San Diego, or orally at the session, who would act for Mrs. O'Rourke if she was found to be incompetent under State law. On April 27, 1992, Mrs. O'Rourke filed a response asking the Court to appoint an attorney for her pursuant to Rule 60(d). [4] *624 In the morning at the May 4, 1992, calendar call, the Court asked petitioners if they had a copy of a State court decision declaring Mrs. O'Rourke mentally incompetent. [5] At one point, Dr. O'Rourke responded: "We sure do", but that they needed time to find it. At another point, he responded that she was not mentally incompetent, and the State court had not appointed a guardian to act for her. The Court gave the petitioners until 1:30 p.m. that day to present a State court decision. When the Court reconvened, Dr. O'Rourke stated that he could not obtain any document relating to such a decision because it was under seal. At the May 4, 1992, proceedings, we concluded that there was no indication that Mrs. O'Rourke was mentally incompetent but that, even if she were, Rule 60(d) provides that if she had no "duly appointed representative", she could be represented by a "next friend" and Dr. O'Rourke would constitute a "next friend". At the same proceedings, petitioners agreed to bring additional records and meet with respondent on June 3, 1992. By Order dated May 4, 1992, we ordered the parties to meet on June 3, 1992, and retained jurisdiction over this case. Following a June 19, 1992, conference call with the parties, by Orders dated June 23, 1992, we ordered the parties to engage in settlement negotiations on July 6, 1992, and file status reports, and set the case for trial at a special session beginning on August 26, 1992. On July 23, 1992, petitioners filed *625 their amended status report, which we treated as a Motion to Continue Trial on their representation that they needed 90 days to refine some of the facts in the case. By Order dated July 24, 1992, we granted petitioners' motion and set the case for trial at a special session beginning on November 17, 1992. On October 22, 1992, petitioners filed a motion for a continuance based on their filing in District Court for the Southern District of California a motion to vacate a judgment of the District Court, which they allege was affirmed by the Court of Appeals for the Ninth Circuit, dismissing their suit against Maxwell and other parties allegedly to force Maxwell to turn over Rorack assets to Dr. O'Rourke. We denied their motion on October 23, 1992. When this case was called on November 17, 1992, petitioners made an oral motion for a continuance, which we denied by Order of that date. OPINION Unreported Income and Gains and Losses
In their opening brief, petitioners contend that (1) they should have been allowed a continuance because of Mrs. O'Rourke's alleged mental incompetency, (2) petitioners were deprived of their legal counsel, Albert O'Rourke, in violation of their *626 Fifth Amendment right to due process, (3) one of respondent's attorneys allegedly "coached" a witness at trial, (4) respondent avoided obtaining tax records from Rorack, and (5) the O'Rourkes do not have records because the Government allegedly took over Maxwell and other companies in which Dr. O'Rourke was involved and placed him "in 'House arrest' in Alburquerque [sic], New Mexico". Respondent maintains that petitioners have taxable income from the various sources described above. In their reply brief, petitioners argue that (1) the "Gross Income of around $ 120,000 per year" for the years in issue is "simply 'inventions' by the I.R.S.", and (2) the gains from the sale of Maxwell stock and the other corporate stocks, the dividend income, and the interest income is taxable to Rorack. They also contend that this case should be dismissed because respondent filed a notice of intent not to file a reply brief, and respondent allegedly attempted to conceal the true facts in the case. Petitioners suggest that they should not be taxed on the income from the O'Rourke Residential Care Home because Dr. O'Rourke was forced from his other business ventures which necessitated Mrs. O'Rourke *627 operating the elderly care business. We note that, in both of petitioners' briefs, there appear to be other arguments which are unclear and appear to be meritless. We agree with respondent to the extent consistent with our findings. Section 61 provides that gross income "means all income from whatever source derived," including compensation for services (fees), gross income derived from business, gains from dealings in property, interest, rents, dividends, and pensions. Social Security benefits are included in gross income as provided in section 86. Petitioners bear the burden of showing the correct amount of their income, or the extent to which it is not taxable to them, if at all. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The check payable to Dr. O'Rourke in redemption of the 6,750 shares of Maxwell stock was endorsed and deposited in his brokerage account as stipulated by the parties. Petitioners have not established that this was taxable to Rorack, the partnership. The stipulations and evidence reflect that the stock was distributed to Dr. O'Rourke, the check was payable to him, and he endorsed it in favor of his account. *628 The fact that he subsequently purchased more Maxwell stock with the proceeds in the account is inconsequential. See In re Larson, 862 F.2d 112 (7th Cir. 1988). Petitioners' argument that the proceeds are taxable to Rorack is contrary to the evidence and untimely (see Roy H. Park Broadcasting, Inc. v. Commissioner, 78 T.C. 1093, 1136 n.40 (1982)). Similarly, the evidence indicates that the other corporate stocks were bought and sold in brokerage accounts on which petitioners are designated joint tenants. Petitioners' son, Albert, testified that petitioners withdrew funds from these accounts to pay their personal expenses. Although Albert's name appears with petitioners' names on these accounts, he appears to have been acting for them in the purchases and sales. They do not contend that the gains or losses or dividends reflected in these accounts were taxable in part to Albert. We conclude that these were petitioners' accounts, and the gains and losses on the stock sales, and the dividends shown on the account statements, were taxable to them. See sec. 1.451-2(a), Income Tax Regs. They have not shown that these *629 were accounts for Rorack, see Cosentino v. Commissioner, T.C. Memo. 1989-305, and this contention is contrary to the evidence and untimely, see Roy H. Park Broadcasting, Inc. v. Commissioner, supra.
The parties stipulated the gross receipts from the O'Rourke Residential Care Home and allowable related Schedule C deductions. Petitioners have not shown that this was not income from their business operation taxable to them. The testimony and other evidence in the record indicate that this was their business, run by Mrs. O'Rourke in their house. Their suggestion that this income should not be taxed to them because they were forced to operate this business to survive allegedly because Dr. O'Rourke was forced from his various other businesses is meritless. They recognized on their 1979 Form 1040 that the income from this business was taxable to them and stipulated that this was their sole proprietorship. Similarly, petitioners have not shown that checks received by O'Rourke and Associates, Raymond C. O'Rourke and Associates, O'Rourke & Associates, Raymond O'Rourke & Associates, or Dr. Raymond O'Rourke, O'Rourke and Associates *630 were not income to them. They stipulated that this was their sole proprietorship. Petitioners also stipulated that they received taxable interest income in 1986, and their contention that this is taxable to Rorack is contrary to the stipulation, has not been shown, and is meritless and untimely. Petitioners have not specifically mentioned the Social Security benefits received by Dr. O'Rourke in 1985 and 1986 and Mrs. O'Rourke in 1980. These are also taxable to them. Inasmuch as petitioners were husband and wife residing in California during the years in issue, the net income described above represents California community income. See Cal. Civ. Code sec. 5110 (West 1983); In Re Marriage of House, 123 Cal. Rptr. 451 (Ct. App. 1975); Washburn v. Washburn, 9 Cal. 475 (1858). We reject petitioners' contention that their motion for continuance should have been granted based on Mrs. O'Rourke's alleged mental incompetency. The petition in this case was filed by petitioners in June 1989. They were uncooperative and dilatory regarding discovery and stipulating to facts. Following conference calls in March and April 1992, *631 we entered an Order dated April 22, 1992, which required petitioners to advise the Court by May 4, 1992, who would act on behalf of Mrs. O'Rourke if she were found mentally incompetent under State law. At the May 4, 1992, proceedings, Dr. O'Rourke was at best equivocal about whether Mrs. O'Rourke was in fact found to be incompetent, and despite the Court's granting petitioners several hours to produce a copy of a State decision declaring Mrs. O'Rourke mentally incompetent, petitioners did not do so. Petitioners never indicated who would act on Mrs. O'Rourke's behalf, but Dr. O'Rourke indicated that the State courts never appointed a guardian for her because she was not found to be mentally incompetent. The case was continued from May 4, 1992, through November 17, 1992, so that the parties could engage in settlement negotiations, and, during that period, petitioners never presented the Court with a copy of such a decision. Based on Rule 60(d) and Dr. O'Rourke's representation to the Court that no guardian had been appointed on behalf of Mrs. O'Rourke, at the May 4, 1992, proceedings, we concluded that there was no indication that Mrs. O'Rourke was incompetent, but that even if *632 she were, Dr. O'Rourke could represent her as "next friend". We stand by our prior conclusions. We note that we have granted petitioners prior continuances and afforded them ample time to produce evidence of Mrs. O'Rourke's alleged mental incompetency and have a guardian appointed under State law if appropriate. This Court has previously dismissed contentions similar to petitioners' argument that they were deprived of their legal counsel in violation of their Constitutional rights. See, e.g., Ruggere v. Commissioner, 78 T.C. 979, 989 (1982); Hartman v. Commissioner, 65 T.C. 542, 543 (1975); Cupp v. Commissioner, 65 T.C. 68, 85-86 (1975), affd. without opinion 559 F.2d 1207 (3d Cir. 1977). The Sixth Amendment of the Constitution of the United States deals only with criminal cases and is not applicable to this civil proceeding. Cupp v. Commissioner, supra; Ruggere v. Commissioner, supra.Petitioners' argument that their Fifth Amendment right to due process changes this rule is meritless. Cf. *633 Hartman v. Commissioner, supra.Not only were petitioners afforded a full opportunity to be heard, but the Court was extremely patient and lenient with them in ruling on their motions and at trial. None of their rights were violated. Petitioners make numerous other arguments which we conclude are meritless and in some instances untimely as well. Self-Employment Tax
Respondent determined self-employment tax for Dr. O'Rourke for each of the years in issue. Respondent did not determine self-employment tax, or seek an increased deficiency in tax in the answer, for Mrs. O'Rourke. Section 1401 imposes a tax on the self-employment income of individuals. Self-employment income means the net earnings from self-employment derived by an individual. Sec. 1402(b). In general, net earnings from self-employment means the gross income derived by an individual from any trade or business which he carries on, reduced by allowable deductions attributable thereto. Sec. 1402(a). Dividends, interest, and gains and losses from sales of capital assets are excluded. Sec. 1402(a)(2) and (3). Generally, if any of the income derived from a trade or business *634 is community income under the applicable State community property laws, all such gross income and deductions shall be treated as that of the husband for self-employment tax purposes. However, if the wife "exercises substantially all of the management and control of such trade or business," the gross income and deductions are treated as that of the wife. Sec. 1402(a)(5)(A). Management and control for these purposes means management and control in fact, not that imputed to a spouse under the community property laws. Sec. 1.1402(a)-8(a), Employment Tax Regs.
Regarding the income earned by O'Rourke and Associates, Raymond C. O'Rourke and Associates, O'Rourke & Associates, or Dr. Raymond O'Rourke, O'Rourke and Associates, petitioners presented no convincing evidence contesting respondent's determination of self-employment tax for Dr. O'Rourke under section 1401 or that he did not manage it for purposes of section 1402(a)(5)(A). However, the evidence indicates that Mrs. O'Rourke managed the O'Rourke Residential Care Home, and, indeed, respondent proposed a finding of fact to that effect. Under section 1402(a)(5)(A), all of the gross income and deductions of the O'Rourke Residential *635 Care Home are treated as that of Mrs. O'Rourke. Respondent did not file a motion to conform the answer to the evidence presented at trial under Rule 41(b) but argued in the opening brief that Mrs. O'Rourke is liable for self-employment tax relating to the net earnings from the O'Rourke Residential Care Home. We conclude that neither petitioner is liable for self-employment tax relating to the net earnings from the O'Rourke Residential Care Home. Additions to Tax
Section 6651(a)(1) imposes an addition to tax for failure to file a return, unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. The addition equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. The burden of showing reasonable cause rests with petitioners. Rule 142(a). In their reply brief, petitioners contend that filing returns for the years in issue "was made impossible by the actions of Maxwell, Parker Milliken and the U.S. Government itself". Petitioners have not shown *636 how they were prevented from filing a return. Indeed, they filed a return for 1979, which attached a Schedule C relating to the O'Rourke Residential Care Home reflecting "Approximate" gross receipts of $ 55,000. The absence of records does not provide reasonable cause for filing delay. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Accordingly, we sustain respondent's determination that petitioners are liable for the additions to tax under section 6651(a)(1). For the tax years 1980 through 1985, section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. For the tax years 1981 through 1985, section 6653(a)(2) imposes a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to the negligence. For 1986, these code provisions were redesignated as section 6653(a)(1)(A) and (B). Negligence is the lack of due care or the failure to do what a prudent person would *637 do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of establishing that the negligence additions to tax do not apply. In their reply brief, petitioners argue that they did not intentionally disregard the rules or regulations to file returns but relied on the advice of their son, an attorney, Albert, to not file a return because of their "Bad Situation" regarding Rorack and Maxwell. Petitioners have not clearly explained or shown how the "Bad Situtation" excused them from following the rules or regulations. Reliance on an attorney must be reasonable. Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without opinion 940 F.2d 1534 (9th Cir. 1991). Additionally, reliance on professional advice standing alone is not an absolute defense to negligence but rather a factor to be considered. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 501U.S.    , 111 S. Ct. 2631 (1991). *638 Dr. O'Rourke holds a Ph.D. degree, and attended Sloan School of Business Management in Boston. Petitioners filed a return for 1979, which their son, Albert, signed as preparer, reflecting "Approximate" business income relating to the O'Rourke Residential Care Home. We conclude that petitioners' reliance on Albert's advice for the years in issue was not reasonable and that petitioners are liable for the additions to tax under section 6653(a)(1) for each year 1980 through 1985, for the additions to tax under section 6653(a)(2) for each year 1981 through 1985, and for the additions to tax under section 6653(a)(1)(A) and (B) for 1986. Section 6654 imposes an addition to tax for underpayment of estimated tax by a taxpayer. We have concluded that each petitioner had a tax liability for each of the years in issue. Respondent determined that there were underpayments of estimated tax for each of the years in issue. Petitioners did not present evidence or contend that they met any of the exceptions to the addition to tax set forth in section 6654(d). Reaver v. Commissioner, 42 T.C. 72, 83 (1964). Indeed, petitioners did not make any arguments regarding *639 the section 6654 additions to tax. Thus, we conclude that petitioners are liable for the additions to tax under section 6654 for each of the years in issue. To reflect respondent's concession and the foregoing, Decision will be entered under Rule 155. Footnotes
1. The applicable Code sectin references to the tax year 1986.↩
2. 50 percent of the interest due on the deficiency.↩
1. The applicable code section references to the tax year 1986.↩
2. 50 percent of the interest due on the deficiency.↩
1. Rorack also agreed to distribute the same number of shares to Dr. Kolb.↩
1. The above amount includes $ 116,437.50 in long-term capital gain resulting from the sale of the Maxwell stock.↩
2. Petitioners began operating a residential care facility for the elderly in 1975 or 1976. The State of California Department of Social Services issued petitioners a license for this purpose in November 1980, but the license was subsequently revoked. Thereafter, they continued to rent rooms to the elderly.↩
1. Mrs. O'Rourke received $ 800 and $ 10,000 from Ruth Davis, one of the elderly residents, on July 12 and 15, 1985, and an additional $ 10,000 on November 26, 1986. In 1985, Mrs. Davis wrote other checks to cash, which total at least $ 1,600, which were cashed by Mrs. O'Rourke. Although it is not clear from the record whether these amounts were not already included in the gross receipts from the O'Rourke Residential Care Home, to which the parties stipulated, the parties are bound by the stipulation, and we do not find that these amounts were additional gross receipts from Mrs. Davis. See Niedringhaus v. Commissioner, 99 T.C. 202, 212↩ (1992).
1. The sum of the amounts of the specific items of deductions in the stipulation do not match the total amounts in several instances; the above amounts are corrected totals based on the amounts of the specific items.↩
3. The record is not clear as to how long and whether one or both petitioners' sons, Albert and Peter, lived in the house during 1980 through 1986. The record is similarly unclear as to how many elderly care residents lived in the house at one time during this period; Dr. O'Rourke testified at one point that three residents lived there at one time and at another point suggested that five residents lived there at one time. Petitioners bear the burden of showing how many members of the family and elderly care residents lived in the house. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115↩ (1933). Respondent proposed findings regarding the amount of depreciation based on three family members and five elderly care residents for the years 1980 through 1982 and on four family members (including Dr. O'Rourke's brother) and five elderly care residents for the years 1983 through 1986. Our finding is based on respondent's proposed finding and not on a lesser amount based on both sons and three elderly care patients living in the house for the years in issue.
4. Rule 60. Proper Parties; Capacity. * * * (d) Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may bring a case or defend in the Court on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may act by a next friend or by a guardian ad litem. Where a party attempts to represent himself or herself and, in the opinion of the Court there is a serious question as to such party's competence to do so, the Court, if it deems justice so requires, may continue the case until appropriate steps have been taken to obtain an adjudication of the question by a court having jurisdiction so to do, or may take such other action as it deems proper.↩
5. Rule 60(c)↩ provides in relevant part that: "The capacity of an individual, other than one acting in a fiduciary or other representative capacity, to engage in litigation in the Court shall be determined by the law of the individual's domicile. * * *"